In the Matter of CENTURY GLOVE, INC., a Delaware corporation, Debtor.

CENTURY GLOVE, INC., Plaintiff,

v.

Alan V. ISELIN, First American Bank of New York, and Richard Haskel, Defendants.

Bankruptcy No. 85–438.
Adv. No. 86–10.

United States Bankruptcy Court, D. Delaware.

July 21, 1986.

P. Clarkson Collins, Jr., Morris, James, Hitchens & Williams, Wilmington, Del., for debtor.

Franklin B. Velie, Christy & Viener, New York City, William L. Witham, Jr., Prickett,

Jones, Elliott, Kristol & Schnee, Dover, Del., for Alan V. Iselin.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

Century Glove, Inc. on February 12, 1986, filed a complaint that, among other things, charges Alan V. Iselin with breaches of fiduciary duty, waste and mismanagement during the time he was president and CEO of Century. Christy & Viener, Iselin's New York counsel, filed on April 11 a motion to dismiss or transfer the proceeding to New York. On April 22 Century citing Rule 1.9 of the Delaware Lawyers' Rules of Professional Conduct moved to disqualify Christy & Viener on the ground that their representation of Century in April 1985 is substantially related to its present representation of Iselin.

The genesis of Delaware's Rule can be traced to the Model Code and Model Rules. It provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which the person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

The Model Code of Professional Responsibility has no provision expressly concerned with representation adverse to a former client. However, courts have held that Canons 4, 5 and 9 establish the "substantial relationship rule." Canon 4 deals with the preservation of client confidences and secrets. Canon 5 imposes a duty of loyalty to the client which requires a lawyer to decline proffered employment if it would be likely to involve him in representing differing interests unless it is obvious that the lawyer could represent the interests of each client adequately and each client consents. Canon 9 calls on each lawyer to avoid even the appearance of professional impropriety.

Under the "substantial relationship rule", Century has the burden of proving (1) that Christy & Viener in fact represented Century and (2) that the subject matter of the previous relationship is substantially related to the matters at hand. Thus, the scope and subject matter of the former and present representations must be examined.

In April 1985, Alan Iselin and Howard Modlin each owned 50% of the stock of Tamarack Associates, Inc. which in turn owned 90% of Century Glove. Iselin was president and CEO of Century. Modlin and Iselin were directors. During the previous year, disputes had arisen between Iselin and Modlin over management of Century resulting in a director deadlock. Iselin proposed a buy-sell agreement of Tamarack stock as a means of breaking the director deadlock at Century. He retained Martin Krall of the Washington, D.C. firm of Shaw, Pittman, Potts & Trowbridge to prepare this agreement. The dispute was not resolved and in April 1985, Iselin retained Christy & Viener to review the agreement prepared by Krall. On May 10, Christy & Viener sent a bill to Century for $1,266 which Century paid. The bill enumerates the services:

FOR SERVICES RENDERED in April, 1985 relating to disputes with Howard Modlin, Esq. and Weisman, Celler, Spett & Modlin, Esqs. including review of various proposed settlements; conferences and telephone conferences with Mr. Iselin; telephone conferences with Mr. Krall; preparation of correspondence and review of correspondence

Thereafter, Howard Modlin or Margot Modlin, his wife, filed the following legal actions:

In the Supreme Court of the State of New York, County of New York:

(1) *Margot S. Modlin, individually and on behalf of Century Glove, Inc. v. Alan V. Iselin, First American Bank of New York and Century Glove, Inc.,* Index No. 14340/85 (Summons dated May 23, 1985);

(2) *Howard S. Modlin v. Richard Haskell and Century Glove, Inc.,* Index

No. 24225/85 (Summons dated July 30, 1985); and

In the Court of Chancery of the State of Delaware, New Castle County:

*Howard S. Modlin v. Alan V. Iselin, Francis H. Trombly, Jr. and Century Glove, Inc.,* Civil Action No. 8104 (Summons dated August 5, 1985).

Christy & Viener did not represent Iselin in any of these actions before November 26, 1985, when they filed an appeal from the November 1 decision of the Delaware Court of Chancery regarding ownership of Tamarack stock that in effect transferred control of Century to the Modlins. On December 5 Christy & Viener filed a motion in Chancery Court for a revision of its November 1 decision.*

On December 13, Mr. Collins of the firm representing Century wrote to Mr. Velie of Christy & Viener objecting to that firm's representation of Iselin as creating a conflict of interest requiring disqualification. Velie responded that there was no colorable basis for a disqualification motion and advised that Christy & Viener would move for Rule 11 sanctions if a motion were brought. Century did not move to disqualify. It defends its decision not to pursue disqualification at that time on the ground that Christy & Viener's representation of Iselin was limited to the appeal of a decision involving the issue of stock ownership in Tamarack and not the mismanagement issues which had been bifurcated and deferred indefinitely.

Following commencement of the bankruptcy court action on February 12, there were numerous telephone conversations between members of the two law firms. In the course of two of these conversations on March 21 and 24, Century raised the disqualification issue with Mr. Taber of Christy & Viener. At a scheduling conference with the bankruptcy judge on April 15, Century stated it would be moving to disqualify Christy & Viener and did so on April 22.

Century has not shown that it was the client for whom Christy & Viener performed services in April 1985. Its reliance on Century's payment of Christy & Viener's bill of May 10 is misplaced. That bill reflects services which were performed in connection with settlement of various disputes between Modlin and Iselin. The document reviewed was a buy-sell agreement relating to Tamarack stock. Further, Modlin in his letter of June 25 objected to Century's payment of Christy & Viener's bill on the ground that this was a wrongful usurpation of Century's corporate funds to pay Iselin's personal obligation. While resolution of the differences between Modlin and Iselin would have affected Century, the real parties in interest were Modlin and Iselin in their personal capacities. It was Iselin who was represented by Christy & Viener not Century Glove.

Assuming *arguendo* that Century was Christy & Viener's client in April 1985, Century has not shown a substantial relationship between past and present representation. Neither Delaware Rule 1.9 nor the substantial relationship test prohibits subsequent adverse representation in an unrelated matter. *ABA/BNA Lawyer's Manual on Professional Conduct.* To establish a substantial relationship between past and present representation, a moving party must delineate with some specificity the subject matter, issues, and causes of action presented in each representation. Merely pointing to a superficial resemblance between the past and present representation is insufficient. *Duncan v. Merrill Lynch, Pierce, Fenner and Smith,* 646 F.2d 1020 (5th Cir.1981), *cert. denied* 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981).

The focus of the April 1985 representation was the proposed buy-sell agreement. The amount of the bill, $1,266 indicates a rather limited or peripheral involvement. There is no evidence of Christy & Viener's involvement with respect to mismanagement issues, the subject of Century's complaint. The three state court actions in-

* On reconsideration, the November 1 opinion was affirmed June 5, 1986.

volving those issues were all filed subsequent to the payment of Christy & Viener's bill for services. Furthermore, Christy & Viener did not represent Iselin in the state court matter until the appeal of the Chancery Court decision relating to Tamarack stock. It would appear that if ever there was a substantial relationship between Christy & Viener's representation of Century and Iselin, it would have been with respect to that portion of the Chancery Court action on appeal. That aspect of the case deals with Tamarack stock ownership which was the subject matter of the buy-sell agreement. That issue, however, is not before this court. Here where mismanagement is the issue no substantial relationship has been established.

Even if there were a substantial relationship, Christy & Viener would not automatically be disqualified by the presumption that relevant confidential information was disclosed during that period of former representation. The court is aware that counsel on both sides of this litigation are faced with vaguely defined conflicts of interest questions. Therefore, presumptions relating to disqualification are rebuttable. The record reveals that Christy & Viener's only contact with Century in April 1985 was with Iselin. There is nothing in the record indicating that Christy & Viener had access to any Century records, files or personnel. The possibility that Century confidences were disclosed is remote. Under these circumstances, the presumption of disclosure of confidences mandating disqualification is rebutted. *ABA/BNA Lawyer's Manual on Professional Conduct.*

For all of the above reasons, Century's motion to disqualify must be denied.